Good morning to the court. My name is David Medby. I represent the appellant. I'd like to discuss two main issues today. The first one being how the allegations of understaffing at the defendant's facilities are tethered to a legal standard that's recognized. The second issue I'd like to discuss is why the district court's decision not to invoke the doctrine of equitable abstention was not an abuse of discretion. As it relates to the first issue, if the court would indulge me for a moment, I'd like the court to imagine that this courtroom is a skilled nursing facility and we're all patients there. And during a specific time period, whether it's a day, a week, a month, the facility is meeting the minimum numeric ratio of 3.2 nursing hours per patient day required by California Health and Safety Code 1276.5. But over that same time period, some portion of the residence, whether it be the gallery, the court, whatever, over that time period, those residents' needs are not being met. By definition, even though that skilled nursing facility meets the 3.2 minimum numeric ratio, the facility is understaffed. And that's because by not meeting the needs of the residents, it violates Title 22-72329.1. And by definition, the facility is understaffed. Under Health and Safety Code 1599.1, each resident has a right to live in an adequately staffed facility. And we've specifically alleged that that is determined on an aggregate composite basis. And that analysis, which we've alleged at the second volume of the excerpt at page 48-49, you determine the collective acuity level of the facility. And the way that's done, which we've specifically alleged, is you take the needs of the residents and that's set forth in MDS forms. And these MDS forms have 66 categories called RUG categories, which set forth the needs of the residents. And once you input that information into the MDS form, it pops out a score telling you how sick that resident is, the acuity level of that resident. So you take those MDS sheets and you determine the collective acuity of the facility. Then you take the staffing levels at the facility over that same time period. Then you compare the collective acuity with those staffing levels, and you get whether the facility was staffed or understaffed. And our claims of understaffing are plausible. They meet the plausibility standard. Under the Century Aluminum case, if there's two alternate explanations, and that's what we have here, either the facility meets the requirements of the law and is adequately staffed, or it fails to meet the requirements of the law and it's inadequately staffed. Only two possible explanations. And the Century Aluminum case says, in that instance, you need to allege facts that tend to exclude the possibility that the alternate explanation is true, that here you need to exclude that the facility is adequately staffed. And we've done that. We've alleged based on the collective acuity that I just described, set forth. That's what you set forth in your second amended complaint. That's correct. In addition, we've alleged that during the residency of the named plaintiff at the facility, that the management company siphoned away funds that are earmarked for adequate staffing. One of the biggest costs of a skilled nursing facility is labor costs. And we've alleged that HCR Manor Care takes, over a specific time period, hundreds of thousands of dollars for no services provided. That should have been earmarked for staffing. We've specifically alleged that. The second category of facts, there's three main categories. The second category of facts, which tend to exclude the possibility that the facilities are staffed adequately, is the failure to meet the CMS guidelines. Now, we don't allege in the second amended complaint that the CMS guidelines are required to be followed in every instance. We just allege in the second amended complaint that in this instance, based on the collective acuity of the residents, the CMS guidelines were not being met, and that shows that the facility was understaffed. There's a difference. We're not tethering it to the CMS guidelines specifically. We're tethering it to the requirements of Health and Safety Code 1599.1. And the fact that they didn't use the CMS guidelines are facts which support the basis for the exclusion that they're adequately staffed. The third category of facts, which tend to exclude the possibility that the facilities were adequately staffed, and excuse me, Your Honors, are the repeated deficiencies issued by the Department of Public Health for inadequate care and violation of resident rights. The fact that the facilities are repeatedly issued deficiencies for violating resident rights is a fact that tends to exclude the possibility that the facilities are adequately staffed. That doesn't mean that the facilities were adequately, were not adequately staffed on that particular occasion, does it? No. On the occasion of your client's residency. Standing alone, no, Your Honor. But it does support the possibility that it's understaffed, the plausibility. And that's the standard under the Century Aluminum case. The second issue, and I'd like to expand on it. There's a heightened pleading standard under Rule 9, isn't there? And don't you have to show more than just basic, it's almost like pleading fraud, isn't it? Yes, and we believe we've met that. The standard is that if a reasonable court could draw inferences from the specific facts alleged, then that's met the standard. And we've alleged specific facts. We didn't just allege the facilities understaffed. We've gone through all these aspirational guidelines, the collective acuity, the RUG scores, the MDS sheets. We've alleged specifically why they're understaffed. We haven't just said in a conclusory tone that they're understaffed. Right, and the district court acknowledged that there were claims or allegations of chronic understaffing, and the fact that you've set out the state requirement, let me have you focus a little more specifically on the district court's analysis that while plaintiff has generally alleged trends indicating understaffing at various periods of time, there's no specific allegation that during plaintiff's short stays, any understaffing actually occurred. Just give me, because I know your time is short, the paragraphs that best support your theory that understaffing occurs in the complaint. Just the paragraph. Would it be paragraph 40? Paragraph 40, and that's at page 52 to 53 of the second volume. It specifically alleged that in August of 2013, when Mr. McRae was a resident of the Fountain Valley facility, that based on the collective acuity levels of the facility at the time, the facility was understaffed. It specifically alleges that during that time. Do you want to save any time for rebuttal? You have one minute. Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. My name is Brad Sealing, and I represent the appellees, the manor care appellees. The district court properly entered judgment in appellees' favor, and this court should affirm that judgment. After three tries, after being given three tries, appellant still couldn't plead the most basic fact that any litigant in federal court needs to plead, which is an injury in fact that impacted him, that impacted him personally. Did the district court overlook Paragraph 40, or do you think Paragraph 40 doesn't do it? I actually think there are only two paragraphs that are relevant to discussing standing. One is Paragraph 40, and one is Paragraph 48. The reason those are the two relevant paragraphs is they discuss the Fountain Valley facility, which is the only facility in which he resided. Actually, I'd add to that Paragraph 24. In Paragraph 24, Mr. McRae alleges, I entered into an agreement with the defendants on October 10, 2013. Paragraph 40, if you notice, in all this discussion of CMS guidelines and CMS numbers and staffing numbers, there's no reference in Paragraph 40 to October 2013. It says during the residency of plaintiff at the facility. That's what he's alleged in the complaint. That's the August allegation, which, again, he has an agreement that he's alleging in October. And so let's assume for purposes, as we must, taking it as true, that he was there both in August and October. So in the October residency. As to the August residency that the Court is focusing on, the only allegation there is an allegation that the staffing exceeded the 3.2 minimum. And what he says is that it didn't meet the, quote, expected numbers of CMS. And that's not a factual allegation, Your Honor. That's a legal conclusion. He alleges that they're inadequate, given the acuity of its residents. And then he gives figures whether right or wrong. He's alleging that it was understaffed during that period. But, Your Honor, if I can explain why that's not a factual allegation, it's actually a legal conclusion. As the Court recognized, the District Court, in each of its orders, this theory of understaffing based on these CMS rating system are not an actionable theory of liability. Those do not establish understaffing. They're not legal requirements. But he's pleading them, not as facts, Your Honor. He's pleading them as a legal requirement. He says CMS expected this. But he's relying on the acuity level set forth in the statute, which presumably sets a baseline for staffing requirements based on what the legislature has concluded. So why isn't it sufficient, as long as he is within the parameters of the statute, that this second amended complaint would give us the information that we need for it to be efficacious? The allegations do not bring him within the parameters of any statute, because, again, he's pleading these as CMS requirements. CMS just recently adopted, in our brief we discuss, proposed regulations on staffing that CMS was anticipating. CMS, again, refused to adopt a specific numeric standard to determine the adequacy of staffing. CMS did that in October of 2016 in its regs. So CMS doesn't set forth a particular standard. And that's the basis of this entire complaint, Your Honors. But I go back to, because I'm not sure what your answer was to the point Judge Marbley made, which is that he's not merely saying that the defendants fell below the CMS numbers, and so therefore I've got a claim. He's tying it specifically to the acuity levels of the patients who were there with him at the time that he was a resident. So to me, those sound like factual allegations. Actually, I respectfully disagree, Judge Nguyen. Those are not factual allegations, because he doesn't say anything about the residents. It's just a conclusion. It's just like saying there's a breach of contract, there's a breach of contract. You have to plead some facts about that. And there aren't any facts. Mr. Medby's argument, and I think their whole position, is really a legal brief. This is how we think staffing should be determined. And frankly, we don't disagree with you. Didn't he say what the staffing levels were when his client was a resident at the nursing home? Didn't he say that in the Second Amendment complaint? He doesn't say it for October, but he does say it for August when he claims he was there as well. We know from his state court complaint that the focus was a residency, an 11-day residency, in October of 2013. But we do have this one sentence that says, in August. And he states that in August, the staffing numbers were 4.2 nursing hours per patient day. And he says that the reason that's inadequate, and the sole basis for that inadequacy, is it didn't meet the requirements that CMS, quote, expected, in other words, that CMS required. That is not, respectfully, that is not a factual allegation. That is a legal conclusion. And it is an erroneous legal conclusion. But he says that the staffing levels are inadequate given the acuity of the residents. That's a factual allegation, that there weren't enough people there given the acuity of the residents. But, again, Judge Reinhart, coming back to what is the basis for that statement, the basis for that statement, he has three bases. He has statements of deficiency. And, again, none of those deficiencies were issued at any time, whether it's August or October of 2013. You know, I can understand, on summary judgment, you may have an argument. But in the complaint, to say that the number of people there weren't enough to take care of the needs of the patients, that's a factual statement. Now, he backed it up with some figures that you don't particularly think are, you know, do much work. Your Honor, we are here not on behalf of a class of patients. No. We are here on behalf of Mr. McRae. And it isn't difficult for Mr. McRae to state, as a matter of fact, I claim the staffing levels were insufficient. And they were insufficient because they affected me. And they affected me in the following ways. But what if the statute sets a baseline which represents what the State has determined to be the minimum level? And if he says they were insufficient because they don't meet these minimum levels, why is that not sufficient? It's a different – that would be a different case than this one, Judge Marbley, because, in fact, what he alleges, because there is a statute, the California legislature has set a minimum, 3.2. Right. And he alleges that the facility exceeded that. So if he had alleged, yes, they are lower than the minimum, that would be sufficient. Even though it didn't affect him? No. He still would have to allege that it affected him. No. He still would have to allege it affected him. Okay. So it wouldn't be sufficient just to say that. Yes. I misspoke. And I did misspeak on that. Your time is short. And since you raised the California equitable abstention doctrine, let me ask you a question about that. As you may know, federal abstention doctrine is applied much more narrowly in limited circumstances with certain requirements that have to be made. So under Erie, I question as to whether the California equitable abstention even applies in federal court at all. Well, there's a question of equitable abstention, and there's also a question in a long line of California cases that we talk about, starting with Harris v. Capital Advisors, California Supreme Court case, that says outside of the context of equitable abstention, when courts are being asked to sort of legislate an outcome and engage in economic policymaking, they should refrain from doing that. They should not do that. It's similar to the concepts of equitable abstention, but it's separate and apart from equitable abstention. So it's recognized in cases like Harris, which we cite, also the California grocers case, that says the court shouldn't go in and do what essentially Mr. McRae is asking them to do, which is to craft a new staffing standard that the state has actually refused to do and that the federal government has refused to do. They haven't set the kind of standards that Mr. McRae is saying have to exist and, in fact, must exist and are required to exist under the law. So are you saying that the courts should not make that kind of ruling, either state or federal courts, that if once the statute only gives a minimum, as long as that minimum is met, that the patients can't complain that there aren't enough? That is not my position, Your Honor. And if the patients have specific allegations about specific problems and harms that occurred to them as a result of the understaffing, absolutely they have a claim. We don't disagree with that legal position. What we disagree with are the factual allegations in the absence of a factual basis. Of course there can be an elder abuse claim. That's all right. You've answered the question. And, in fact, there was. Mr. McRae brought a claim. Don't those allegations, though, put the defendant on notice in a notice-pleading regime? Well, we have two claims here. We have a Consumer Legal Remedies Act claim, which is, as you pointed out in your questions to Mr. Medby, require 9b specificity. So no, they aren't under 9b. No, sort of general allegations that the facility was chronically understaffed, understaffing, acuity, things like that, are way below a 9b standard. And it's a personal standard in a class case. That's the issue we're looking at right now, what is alleged, and there are no allegations. Thank you, Kent. Thank you. One minute for rebuttal. Yes, thank you, Your Honor. The first point I'd like to make is just to reiterate that the 3.2 nursing hours per patient day is not the legal standard. And the district court itself even recognized that in its order relating to the First Amendment complaint when it stated, nothing in the text of the regulations indicates that if a nursing home fulfills the minimum level of 3.2 nursing hours, it necessarily has an adequate number of personnel to carry out the functions of the facility. And that's at the first volume of the excerpt at page 26. The district court then backtracked and reversed its position relating to the Second Amendment complaint. As I explained earlier, the legal standard is meeting the needs of the residents under Title 22-72329.1 and California Health and Safety Code 1276.65. Bonus to where you detail the specific harm visited upon your client, Mr. McRae. Yes, relating to the 1430B cost of action, the specific harm is a violation of the resident rights under Health and Safety Code 1599.1. California Health and Safety Code Section 1430B provides a private right of action for violation of resident rights as set forth in Title 22 Section 72527, which incorporates Health and Safety Code 1599.1. 1599.1 provides the resident right, each resident, to live in an adequately staffed facility. And the Schutz case specifically held that a 1430B private right of action can be premised upon a violation of 1599.1. And if you look at the language of 1599.1, it's adequately staffed facility. It's in the aggregate. It doesn't mean, it doesn't say that the individual resident didn't receive an adequate amount of staff for every day that that resident was a resident at the facility. It says the right to live in an adequately staffed facility, and we specifically alleged that that's determined on a composite aggregate basis. As it relates to abstention, just expanding on what's in our brief, under the California doctrine, if there's no alternative means for redress, then the doctrine cannot be applied. And here we have that. It's clear cut. They're saying that the DPH, Department of Public Health, is charged with making sure facilities are staffed adequately or not. But the DPH cannot give the plaintiff any redress under the CLRA cause of action. It can't force the facility to make true representations. It can't order a facility not to conceal facts. So without this court action, the plaintiff has no redress under the CLRA cause of action. And in addition, the CLRA provides for legal remedies. So as a matter of law, the court cannot abstain from redressing those legal remedies. I think we've taken you over, Sam. Thank you. Thank you. Thank you both very much. The case, as you argued, will be submitted.
judges: Reinhardt, Nguyen, Marbley